IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| N.E.,<br>*Individually and on behalf of H.E., a minor,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV684 |
| | ) | |
| BLUE CROSS BLUE SHIELD OF<br>NORTH CAROLINA and CARSON<br>DELLOSA PUBLISHING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This ERISA case is before the Court on Defendant Blue Cross Blue Shield of North Carolina's ("BlueCross" or "Defendant") Motion to Dismiss Second Amended Complaint for Failure to State a Claim [Doc. #43]. For the reasons set out below, the Court will recommend that Defendant's Motion to Dismiss be granted in part and denied in part, as further set out below.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

The following facts are taken from Plaintiff's Second Amended Complaint ("Complaint") [Doc. #42]. During the time at issue in this action, Plaintiff N.E. was a participant in the Carson-Dellosa Publishing, LLC Welfare Benefit Plan ("the Plan"), a self-funded employee welfare benefits plan under Employee Retirement Income Security Act of 1974 ("ERISA"), and Plaintiff's son H.E. was a beneficiary of the Plan. (Compl. ¶8). Carson-Dellosa Publishing, LLC was the Plan Administrator, and Defendant BlueCross was the third-party claims administrator for the Plan. (Compl. ¶2-4). Plaintiff also alleges that Defendant

acted as an agent of Carson-Dellosa Publishing, LLC, the Plan Administrator. (Compl. ¶4.) Plaintiff alleges that H.E. received medical care and treatment at Elements Wilderness Program from June 12, 2018 through September 4, 2018 and at Waypoint Academy from September 5, 2018 through December 16, 2019. (Compl. ¶9.) Plaintiff alleges that Elements and Waypoint are both "licensed treatment facilities" in Utah that provide "sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." (Compl. ¶9.) Plaintiff alleges that Defendant denied Plaintiff's claims for payment for the cost of H.E.'s treatment at Elements and Waypoint. (Compl. ¶10.)

### i. *H.E.'s Mental Health and Treatment*

Plaintiff alleges that in 2012 and while still a minor, H.E. developed severe depression, anxiety, substance abuse, and a pattern of self-harm which escalated to suicidal ideation and suicide attempts, and he received treatment at a psychiatric hospital. (Compl. ¶¶14-17.) After H.E. was discharged from the psychiatric hospital, he initially showed signs of improvement in his mental health but ultimately overdosed on Benadryl in another attempt to end his life, which resulted in another hospitalization. (Compl. ¶17.) At the hospital, H.E.'s medical team recommended "additional treatment with 24-hour monitoring and therapy," and H.E. was taken directly from the hospital to Elements on June 12, 2018. (Compl. ¶¶17-18.) H.E. remained at Elements for just under 90 days, until September 4, 2018, and then transferred to Waypoint on September 5, 2018. (Compl. ¶9.)

### ii. *Defendant's Denial of Benefits for Treatment at Elements*

Defendant initially denied coverage for H.E.'s treatment at Elements for lack of preauthorization. (Compl. ¶¶19-20.) On June 14, 2019, Plaintiff appealed the denial of

benefits for treatment at Elements, citing the portion of the Plan providing for the possibility of retrospective authorization even if preauthorization was not obtained. (Compl. ¶¶19-20.) Plaintiff included letters from H.E.'s doctors and therapists supporting the need for care in a long term residential treatment center. (Compl. ¶22-23.) Plaintiff alleges that she also requested that, in the event of a denial of her appeal, Defendant provide her "with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the plan's criteria for skilled nursing and inpatient rehabilitation facilities, and any reports or opinions from any physician or other professional concerning the claim[,]" which Plaintiff defines as the "Plan Documents." (Id. ¶24.)

According to the Complaint, Defendant upheld its denial of payment for H.E.'s treatment at Elements in a letter dated July 19, 2019. (Compl. ¶25.) Specifically, the denial stated that:

> Elements Wilderness Program is an out-of-network provider and although some of the claims were reprocessed all of the claims processed out-of-network and set to pay without pre-authorization. Therefore, there are no denials on file. For future reference, it is the responsibility of the member to obtain and verify that pre-authorization has been obtained when using providers outside the state of North Carolina and/or out-of-network. As for your request to review claim(s) for dates of service July 1, 2018 through July 15, 2018, no claim(s) were located in our system.

(Compl. ¶25.) Plaintiff submitted a complaint to the North Carolina Department of Insurance, stating that "despite multiple attempts at contact, [BlueCross] had not so much as told her whether or not her claims had been processed and she had no indication, when or if they would be processed." (Compl. ¶26.) On December 31, 2019, Plaintiff submitted a level

3

two appeal to BlueCross, asserting that (1) "outdoor behavioral health treatments like Elements were not listed among the service that explicitly required preauthorization"; (2) even if preauthorization were required, "the insurance contract allowed for a retrospective review to be performed in the event that preauthorization was not obtained"; (3) the language of the Plan was ambiguous and vague, and the precertification process was difficult to understand and navigate in violation of BlueCross's responsibility under ERISA; (4) she had not been given a full and fair review; and (5) during calls with a BlueCross representative, she was told that BlueCross "had not processed the claims due to the use of the '1006' revenue code assigned to Elements." (Compl. ¶27-32.) Finally, Plaintiff questioned whether Defendant's "apparent exclusion of these services constituted a violation of the MHPAEA [Mental Health Parity and Addiction Equity Act of 2008] and asked BCBSNC to perform a 'formal parity analysis' of the Plan to determine MHPAEA compliance" and again requested copies of the Plan Documents. (Compl. ¶32.)

According to the Complaint, Defendant responded to the level two appeal on February 17, 2020, with a letter maintaining its denial of benefits on the grounds that, "Certain services, regardless of the location require PRIOR REVIEW and CERTIFICATION by BCBSNC in order to receive benefits." (Compl. ¶33) (internal quotation marks omitted). However, the letter also said that:

> The facility where you attended, Wilderness Camp, is non-covered by your benefit plan. Per your plan under what is not covered, you will see that your plan does not cover institution [sic] providing education in special environments and/or Inpatient confinements that are primarily intended as a change of environment.

> The claims are filed as inpatient and the facility is not a licensed inpatient mental health facility. The provider is also not a licensed residential treatment facility.

4

The claims are filed with inpatient place of service. [sic] Inpatient services would require pre admission certification. There are no pre admission certifications on file for the residential mental health treatment or inpatient mental health services for these dates of services.

(Compl. ¶34.) Thus, this determination letter denied Plaintiff's claim for several reasons, including (1) Wilderness Camp was not covered because the Plan did not cover education in special environments or inpatient treatment intended as a "change of environment"; and (2) Elements was not a licensed inpatient mental health or residential treatment facility; and (3) inpatient services would have required pre admissions certification.

Plaintiff submitted another appeal on June 22, 2020, again arguing that the Plan "did not require preauthorization for the services H.E. received and, in any event, she had requested authorization multiple times now but BCBSNC continued to disregard her arguments." (Compl. ¶¶35-36.) Plaintiff also argued that "Elements was not an excluded service nor was it an educational program, but it was a licensed and accredited outdoor behavioral health facility for which coverage was available," that Defendant's denial "violated the MHPAEA which prohibited an insurer from imposing treatment limitations on mental health services which were not equally applied to analogous medical or surgical services" based on Defendant's apparent "restriction on facility type which was only applied to outdoor behavioral health programs" and apparent "preauthorization requirement for outdoor behavioral health programs when many comparable medical or surgical programs such as inpatient rehabilitation or hospice programs had no such requirement." (Compl. ¶¶37-39.) Finally, Plaintiff alleges that she once again asked Defendant to provide the Plan Documents,

and asked Blue Cross to forward that request to the appropriate plan fiduciary if it was not the appropriate entity to provide the materials. (Compl. ¶40.)

Defendant denied that appeal in a letter on June 29, 2020, and upheld the denial of benefits for H.E.'s treatment at Elements for the same reasons as the February 17, 2020 letter, because the facility was "non-covered" by the Plan, and:

> Per your plan under what is not covered, you will see that your plan does not cover institution [sic] providing education in special environments and/or Inpatient confinements that are primarily intended as a change of environment. The claims filed as inpatient and the facility is not a licensed inpatient mental health facility. The provider is also not a licensed residential treatment facility. The claims are filed with inpatient place of service. Inpatient services would require pre admission certification. There are no pre admission certifications on file for the residential mental health treatment or inpatient mental health services for these dates of service.

(Compl. ¶41.)

In short, Plaintiff alleges that Defendant improperly denied payment for H.E.'s care at Elements by applying the Plan's preauthorization requirement but refusing to retrospectively review the claim(s) as allowed by the terms of the Plan, characterizing Elements as both an unlicensed residential treatment facility and an unlicensed inpatient mental health facility, refusing to accept the billing code for the care that H.E. received at Elements, and imposing treatment limitations on mental health services which were not applied to analogous medical or surgical services in violation of the MHPAEA.

### iii. *Defendant's Denial of Benefits for Treatment at Waypoint*

After leaving Elements on September 4, 2018, H.E. went to Waypoint. With respect to the claims for H.E.'s treatment at Waypoint, Defendant approved H.E.'s treatment at Waypoint from September 5, 2018, through October 10, 2018. (Compl. ¶42.) However,

6

Plaintiff alleges that Defendant improperly denied payment for H.E.'s treatment at Waypoint after October 10, 2018. Plaintiff appealed Defendant's coverage denial for H.E.'s care on April 3, 2019, stating that she "had not been provided with any actual denial letter but had been told by [Waypoint] that services had been denied . . . [and] she then contacted BCBSNC and was told that no formal denial letter had ever been issued." (Compl. ¶43.) Plaintiff alleges that she did receive an Explanation of Benefits dated January 22, 2019, which noted that a portion of H.E.'s treatment at Waypoint had been denied due to "lack of authorization" but that no "actual denial letter stating the full rationale for the denial of care of all dates of service" had been issued. (Compl. ¶44.) Plaintiff alleges that she requested that H.E.'s treatment "be evaluated in accordance with the Plan's definition of medical necessity" and requested copies of the Plan Documents. (Compl. ¶45.)

In response to her level one appeal, Plaintiff alleges that Defendant upheld its denial of benefits as to Waypoint in a letter dated April 12, 2019, which stated that:

> Magellan Care Guidelines criteria for Residential Behavioral Health Level of Care, Chile or Adolescent treatment have not been met. Your symptoms do not appear to require a twenty four (24)-hour per day, seven (7) day per week treatment facility to help you learn how to take care of your daily living needs for one or more of the following reasons: You are able to care for your physical needs. You are not at risk of being dangerous to yourself or others. Where you live does provide the help you need to get better. Your current symptoms would be safely treated at a less restrictive level of care.

(Compl. ¶46.) After the April 12, 2019, letter, Plaintiff alleges that Defendant sent an additional letter on May 10, 2019, which explained that "no call was made for pre-authorization and there was no verbal denial given" and that certification was required, the member was responsible for obtaining preauthorization, and "there were no extenuating

circumstances justifying a failure to obtain preauthorization." (Compl. ¶47) (internal quotation marks omitted).

Plaintiff submitted a level two appeal of Defendant's denial of H.E.'s treatment at Waypoint on October 23, 2019, noting that Defendant had actually already authorized 37 days of treatment at Waypoint, and further asserting that Defendant had not reviewed her claims "using a board certified psychiatrist with a specialization in H.E.'s diagnoses as she had requested" but rather "an appeals analyst with four years of experience" which violated her ERISA rights and her contractual rights under the terms of the Plan. (Compl. ¶¶48-49.) Additionally, Plaintiff noted the provision of the Plan which required Defendant to "provide written confirmation of the denial 'no later than 15 days after BCBSNC receives the request[,]'" and noted that it had been "more than a year without a written denial" thus constituting a breach of the Plan. (Compl. ¶50.) Plaintiff noted that she still had not received the Plan Documents and again requested them. (Compl. 51.) Finally, to the extent the May 10 letter added a denial based on lack of preauthorization, she noted that as to Waypoint she could show that she had called for preauthorization, that she "had a voicemail from a case manager to prove it[,]" that "more than a month's worth of treatment" had been approved, and that a "continuing authorization had been requested." (Compl. ¶52.)

In response to Plaintiff's level two appeal of Defendant's denial of coverage for Waypoint treatment, Plaintiff alleges that Defendant upheld the denial on November 7, 2019, due to "Unauthorized Admission" and an explanation that:

> Your request for coverage of inpatient mental health care for your child is not approved. We had a doctor outside of Blue cross NC who is an expert in mental health (Psychiatrist) review the health records. They did not find that your health plan's coverage guidelines for inpatient care were met. Specifically, they

did not find ongoing safety concerts that would require 24 hour per day 7 day per week ongoing after October 11, 2018 . . . . The treatment for [H.E.] did not require the intensity of residential mental health services from October 11, 2018 forward, but instead would have been more appropriate for continuation of treatment in a less restrictive setting.

(Compl. ¶ 53-54.) Plaintiff alleges that she submitted an additional appeal as to this denial of coverage on April 11, 2020, in which she disputed Defendant's description of Waypoint as an "acute inpatient hospital" as well as the "use of acute inpatient care guidelines to evaluate the treatment," arguing that Waypoint is better described as "a subacute residential treatment center, and any attempt to evaluate it using acute guidelines should be considered void" and such an evaluation would violate the MHPAEA. (Compl. ¶¶ 55-56.) Plaintiff alleges that she asked Defendant to "conduct a parity analysis to determine whether or not my plan is truly being administered in compliance with the MHPAEA" as well as to provide "physical copies of the results of this analysis" and copies of the Plan Documents. (Compl. ¶59) (internal quotation marks omitted).

Defendant responded to Plaintiff's level two appeal in a letter dated May 18, 2020, which reads in relevant part:

The First External Medical Specialist reviewed your request and stated . . . Based on all the information reviewed, [H.E.]'s clinical condition does not meet the medical necessity criteria for benefits for the Residential Mental Health Services as outlined in the Blue Cross NC Corporate Medical Policy (CMP) Medical Necessity[.]

There are no co-morbid medical problems or substance abuse. There are no pending legal charges. [H.E.]'s parents and siblings are supportive. As of 10/11/2018, [H.E.] is no longer self-harming and aggressive urges. [H.E.] was maintaining appropriate ADLS. [H.E.] was not actively manic or psychotic. [H.E.] was not receiving any medications requiring close monitoring or frequent

9

blood work. There are no co-morbid medical problems requiring residential level of care.

> [H.E.] did not show evidence of requiring 24 hours 7 day/week nursing supervision, intervention, and treatment in a therapeutic facility for mental health or substance abuse needs. [H.E.] did not have any reported medical or psychiatric conditions that would render unsafe treatment on an outpatient basis . . . . Additional problems that meet the admission criteria have not emerged. There is no evidence that [H.E.] would be at a risk to self or others if [H.E.] were not in a residential treatment program. [H.E.] is adequately able to care for physical needs. There is no indication that disposition planning or attempts at therapeutic re-entry into the community would result in exacerbation of the psychiatric illness to the degree that would necessitate continued residential treatment. There is no indication that [H.E.] could not be treated effectively in an intensive outpatient level of care beginning 10/11/2018. [H.E.] meets criteria for intensive outpatient mental health treatment. As such, medical necessity has not been established[.]

(Compl. ¶62) (internal quotation marks omitted). Defendant's letter went on to reiterate the agreement of a second reviewer that H.E.'s care at Waypoint was not medically necessary:

> [A] lower level of care such as PHP [partial hospital program], would have been more appropriate based on the mild acuity of mental health symptoms documented . . . . The documentation provided did not indicate ongoing acute safety concerns that would have necessitated 24 hours a day 7 days a week mental health treatment from 10/11/2018 onwards. This is because although the patient had intermittent fleeting passive suicidal thoughts, he did not represent a serious risk of suicide. The incidents in which [H.E.] scratched himself with a tube of toothpaste and [H.E.]'s own watchband. This is not potentially serious and not requiring the treatment intensity of 24-hour residential mental health services for monitoring purposes.

> He did not need to be placed in restraints of seclusion from any physical aggression . . . . He was medically stable and tolerated the medications prescribed to him. There were no documentation drug withdrawal symptoms. [sic] As a result, his treatment did not require the intensity of mental health services from 10/11/2018 forward, but instead would have been more appropriate for continuation of treatment in a less restrictive setting such as a PHP (partial hospital program).

(Compl. ¶63.)

10

In short, Plaintiff alleges that Defendant improperly denied coverage for H.E.'s treatment at Waypoint because Defendant improperly processed Plaintiff's request for preauthorization, ignored Plaintiff's request for continuing authorization, and improperly applied the medical necessity criteria because H.E.'s treatment was medically necessary and because Defendant characterized Waypoint as an acute inpatient hospital unit when it should have been characterized as subacute residential treatment center.

Plaintiff alleges that she has exhausted her prelitigation appeal obligations under the terms of the Plan and ERISA. (Compl. ¶64.) Additionally, Plaintiff alleges that her final request for documents from Defendant was delivered to Defendant on May 21, 2021, and included requests for: (1) a complete copy of H.E.'s claim file; (2) disclosure of the identities of all individuals with clinical or medical expertise who evaluated H.E.'s treatment; (3) copies of the "medical necessity criteria utilized by BCBSNC in determining that H.E.'s treatment was not medically necessary and that treatment for him at a lower level of care was appropriate;" (4) "the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, inpatient hospice treatment, and any other medical/surgical sub-acute medical necessity guidelines;" (5) "copies of any and all internal records compiled by BCBSNC in connection with [H.E.]'s claim;" and (6) "any other document[s] under which [H.E.]'s insurance plan was operated." (Compl. ¶65.) Plaintiff alleges that Defendant's denial of benefits for H.E.'s treatment was a breach of contract which resulted in Plaintiff's incurring medical expenses which total over $460,000, and that Defendant failed to provide Plaintiff with a copy of the requested documents. (Compl. ¶66-67.)

Plaintiff originally filed this action in the District of Utah on May 15, 2021, and the case was subsequently transferred to this Court. Defendant then filed a Motion to Dismiss, and in response Plaintiff filed a Consent Motion for Leave to File a Second Amended Complaint, which the Court granted. Plaintiff filed her Second Amended Complaint, now the operative complaint in this matter, raising three causes of action. First, Plaintiff seeks damages to recover benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Second, Plaintiff seeks equitable relief for Defendant's alleged violation of the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") pursuant to 29 U.S.C. § 1132(a)(3). Third, Plaintiff seeks statutory penalties pursuant to 29 U.S.C. § 1132(a)(1)(A) and (c) based on Defendant's alleged failure to produce certain requested documents within 30 days.

In the present Motion to Dismiss, Defendant argues that Plaintiff's First Cause of Action should be dismissed because Plaintiff fails to identify the terms of the Plan that allegedly provide coverage for the treatment at issue, and further contends that under the terms of the Plan Benefit Booklet, prior review and certification were required for treatment at Elements and Waypoint. (Def. Mem. [Doc. #44] at 13.) Defendant also argues that Plaintiff's Second Cause of Action for equitable relief based on the alleged violation of the Parity Act fails because Plaintiff does not identify a written term of the applicable Plan that imposes more restrictive limits on mental health or substance abuse treatment than it does on comparable medical or surgical benefits and Plaintiff makes only conclusory allegations that Blue Cross applied medical necessity criteria more stringently to H.E.'s mental health treatment than it did to a comparable medical or surgical treatment. Defendant further argues that Plaintiff's Second Cause of Action for equitable relief for the alleged Parity Act violation cannot be

brought under § 1132(a)(3) because the First Cause of Action for recovery of benefits, if adequately alleged, would provide Plaintiff with an adequate legal remedy for her injury. Finally, Defendant contends that Plaintiff's Third Cause of Action fails because Defendant BlueCross is not a "Plan Administrator" subject to 29 U.S.C. §1132(a)(1)(A) and that Carson-Dellosa Publishing, LLC, the Plan Administrator, timely responded to Plaintiff's request for documents.

## II.   DISCUSSION

### A.   Standard

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all of the factual

13

allegations contained in a complaint, but is not bound to accept legal conclusions. <u>Iqbal</u>, 556 U.S. at 678. Thus, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

> B. First Cause of Action: Recovery of Benefits under 29 U.S.C. § 1132(a)(1)(B)

In the First Cause of Action, Plaintiff seeks damages to recover benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Specifically, Plaintiff seeks to recover benefits under the Plan for the cost of H.E.'s medically necessary treatment at Elements and Waypoint. Defendant argues that Plaintiff has failed to identify the terms of the Plan that provide coverage for H.E.'s treatment at Elements and Waypoint, which precludes Plaintiff's ERISA claim for benefits from proceeding.

Section § 1132(a)(1)(B) allows "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105 (2008) (citing 29 U.S.C. § 1001 et seq.; 29 U.S.C. § 1132(a)(1)(B)). In <u>Glenn</u>, the Supreme Court noted that

> "ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan; it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a 'full and fair review' of claim denials, and it supplements marketplace and regulatory controls with judicial review of individual claim denials."

14

Id. at 115 (citing 29 U.S.C. § 1104(a)(1), § 1133(2), § 1132(a)(1)(B)) (internal citations and quotations omitted). The Fourth Circuit has set out basic guidelines for "judicial review of ERISA plan determinations." Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 358 (4th Cir. 2008). First, "a reviewing court must be guided by principles of trust law, taking a plan administrator's determination as 'a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries).' Second, courts must 'review a denial of plan benefits under a de novo standard unless the plan provides to the contrary.' Third, when the plan grants the administrator 'discretionary authority to determine eligibility for benefits, . . . a deferential standard of review is appropriate.' And fourth, '[i]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" Champion, 550 F.3d at 358 (quoting Glenn, 128 S. Ct. at 2347-48) (internal citations omitted). In conducting judicial review in an ERISA case, the Court ordinarily considers the record that was before the Plan Administrator. See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994); see also Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000) (identifying factors to consider in reviewing a plan administrator's decision for reasonableness, including the language of the plan; the purposes and goals of the plan; the adequacy of the materials considered to make the decision and the degree to which they support it; whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; whether the decision-making process was reasoned and principled; whether the decision was consistent with the procedural and substantive requirements of

15

ERISA; any external standard relevant to the exercise of discretion; and the fiduciary's motive and any conflict of interest it may have).

However, Defendant here seeks dismissal without consideration of the record, on a Motion to Dismiss, contending that Plaintiff has failed to identify the specific terms of the Plan that provide coverage for H.E.'s treatment at Elements and Waypoint. In response, Plaintiff argues that the Complaint alleges that the Plan's explicit terms allow for coverage for medically necessary mental health treatment, which Defendant failed to provide. As summarized at length above, the Complaint alleges that Defendant denied payment for H.E.'s treatment at Elements and Waypoint for failing to obtain preauthorization, but Plaintiff contends that preauthorization is not required for these services under the terms of the Plan, that in any event she requested and obtained preauthorization for Waypoint and requested continuing authorization for Waypoint, and that she also requested retrospective authorization for both Elements and Waypoint, which she contends is specifically provided for in the Plan but Defendant failed to provide.

In addition, as summarized above as to Elements, the Complaint alleges that Defendant improperly denied coverage for H.E.'s treatment at Elements by asserting that the facility was "non-covered" based on provisions of the Plan excluding "education in special environments" or "inpatient confinements that are primarily intended as a change of environment." As set out in the Complaint, Plaintiff challenges the application of these exclusions. The Complaint further alleges that Defendant also denied coverage for Elements because it was not a licensed inpatient mental health facility or licensed residential treatment facility, but the Complaint contends that it was properly licensed. The Complaint also alleges that Defendant denied

16

coverage for Elements based on an inability to process the claim due to the associated revenue code, and Plaintiff challenges that determination. In addition, the Complaint alleges that H.E.'s treating physicians and therapists at Elements providing letters to establish that his treatment was medically necessary, and that Defendant failed to undertake a full and fair review of that evidence.

With respect to Waypoint, as set out in the Complaint and as summarized at length above, Plaintiff contends that Defendant improperly denied coverage for H.E.'s treatment at Waypoint on grounds including that Defendant improperly processed Plaintiff's request for preauthorization, ignored Plaintiff's request for continuing authorization, improperly determined that the treatment at Waypoint was not medically necessary, improperly characterized Waypoint as an "acute inpatient hospital unit" instead of as a "subacute residential treatment center," and did not provide Plaintiff with a denial letter as late as April 2019 allegedly in violation of Defendant's obligation to provide written confirmation of the denial within 15 days after receiving the request.[1] Notably, Defendant's denial based on the lack of medical necessity involved several rounds of medical reviews that invoked application of "Magellan Care Guidelines" (Compl. ¶46) and "Blue Cross NC Corporate Medical Policy (CMP) Medical Necessity" (Compl. ¶62), but those guidelines and policies are not contained in the Benefit Booklet relied on by Defendant in the Motion to Dismiss, and Plaintiff alleges that the services were in fact medically necessary, based on the opinions of H.E.'s doctors and therapists, and therefore covered under the terms of the Plan.

---

[1] Plaintiff also alleges that Defendant violated the Parity Act, as discussed below with respect to the Second Cause of Action, and failed to provide Requested Plan Documents, as discussed below with respect to the Third Cause of Action.

17

Having considered the briefing, the Court concludes that the allegations in the Complaint are sufficient to put Defendant on notice of the provisions of the Plan at issue. While Defendant may dispute Plaintiff's contentions, the analysis of whether the denial of benefits was reasonable under the terms of the Plan is a question for review on the record applying the relevant factors, and would be premature at this stage. Indeed, attempting to resolve these issues at this stage would essentially create an end-run around the structured process for judicial review in ERISA cases for a Plan participant challenging a specific denial of coverage.[2]

The Court also notes that in support of this argument in the Motion to Dismiss, Defendant argues primarily that under the terms of the Plan as set out in the Benefit Booklet, prior review and certification were required for treatment at both Elements and Waypoint. Defendant contends that because Plaintiff failed to request prior review and certification, coverage is not provided under the terms of the Plan, and dismissal is appropriate. However, these assertions ignore Plaintiff's contentions in the Complaint that Elements and Waypoint are not facilities for which preauthorization is required, that even if preauthorization is required the Plan also provides for retrospective authorization and review that Defendant failed to provide, that as to Waypoint Plaintiff requested and obtained preauthorization and

_____

[2] The Court has considered the cases cited in Defendant's Brief. (Def. Br. [Doc. #44] at 11-12.) Those cases largely involve claims brought by treatment providers or other group claims, with very general assertions, often without even identifying the relevant plan or any supporting facts. In contrast, in the present case Plaintiff's contentions are more detailed and specific regarding the Plan provisions at issue and the specific denial of benefits as discussed above. The Court also notes that Defendant cites to a Benefit Booklet that was not submitted with the present Motion to Dismiss, but was previously attached to a prior Motion to Dismiss [Doc. #35-1]. Even if considered, that Benefit Booklet includes the provisions that Plaintiff asserts were violated, including Covered Services for Inpatient ant Facility Care (p. 21), Covered Services for Mental Health and Substance Abuse Services (p. 30), Member Rights to a timely decision and reasons (p. 44), provisions for Prior Review, Concurrent Review, and Retrospective Review (p. 44-46), and the framework for appeals including when a denial is based on lack of Medical Necessity (p. 49-50.).

also requested continuing authorization, and that Defendant denied coverage for multiple reasons including lack of medical necessity, all of which Plaintiff challenges. These contentions can be analyzed and reviewed on the record under the framework for judicial review of ERISA actions, but cannot be resolved on a Motion to Dismiss. Therefore, Defendant's Motion to Dismiss should be denied as to the First Cause of Action under 29 U.S.C. § 1132(a)(1)(B), without prejudice to further consideration of these issues on the record on appropriate dispositive motions.

C. Second Cause of Action: Violation of the Mental Health Parity and Addiction Equity Act of 2008 under 29 U.S.C. § 1132(a)(3)

In the Second Cause of Action, Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3) for Defendant's alleged violation of the Parity Act. Defendant seeks dismissal of this claim on two grounds: first, Defendant argues that Plaintiff has not stated a Parity Act claim; second, Defendant contends that 29 U.S.C. § 1132(a)(3) is not the appropriate mechanism for bringing this claim because it would be duplicative of her first claim for ERISA benefits under § 1132(a)(1)(B) and should be dismissed. The Court considers each of these contentions in turn.

1. *Parity Act*

The Parity Act was enacted "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016); 29 U.S.C. § 1185a. Under the Parity Act, where a group health plan provides both medical/surgical benefits and mental health/substance use disorder benefits, the Act requires that "the treatment limitations

19

applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations under the Parity Act can be quantitative or nonquantitative. 29 C.F.R. § 2590.712(a). "Quantitative treatment limitations are expressed numerically (such as fifty outpatient visits per year), while nonquantitative treatment limitations otherwise limit the scope or duration of benefits." Michael M. v. Nexsen Pruet Group Med. & Dental Plan, No. 3:18-cv-00873, 2021 WL 1026383, at *10 (D.S.C. Mar. 21, 2021). "Nonquantitative limitations include, for example, 'medical management standards limiting or excluding benefits based on medical necessity or medical appropriateness or based on whether the treatment is experimental or investigative.'" Id. (quoting 29 C.F.R. § 2590.712(c)(4)(ii)(A)).

> "A group health plan . . . may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan . . . as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712. In short, a plan may not impose a nonquantitative limitation for mental health or substance use disorder benefits that is more restrictive than the limitations on comparable medical/surgical benefits.

Michael M., 2021 WL 1026383, at *11. "To determine whether the Plan has imposed a more restrictive limitation on mental health/substance use disorder benefits than comparable medical/surgical benefits, the Court must identify what specific benefits it is comparing" and the plaintiff must show that the "mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being

compared." <u>Michael M.</u>, 2021 WL 1026383, at *11 (quoting <u>A.H. by & through G.H. v.</u> <u>Microsoft Corp. Welfare Plan</u>, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018)).

The Parity Act prohibits more restrictive treatment limitations as written and as applied, so a plaintiff can allege violations of the Parity Act by asserting (1) a facial challenge alleging that the terms of a plan discriminate against mental health and substance abuse treatments in comparison to medical or surgical treatment or (2) an as-applied challenge by alleging that the same nonquantitative treatment limitations are applied more stringently to mental health and substance use disorder benefits. <u>Michael M.</u>, 2021 WL 1026383, at *10. When a plaintiff brings an as-applied challenge, the plaintiff must show that the plan applies the nonquantitative treatment limitation disparately to mental health benefits and medical/surgical benefits. <u>Michael M.</u>, 2021 WL 1026383, at *14 (citing <u>Welp v. Cigna Health</u> <u>& Life Ins. Co.</u>, No. 17-80237-CIV, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017); 29 C.F.R. § 2590.712(c)(4)(ii)(A)).

Plaintiff has not specified the type of Parity Act challenge brought here, but Plaintiff alleges that Defendant violated the Parity Act when Defendant applied medical necessity criteria more stringently by using acute inpatient care guidelines and criteria to evaluate claims for care received at sub-acute residential mental health/substance abuse treatment facilities, applied limitations based on the type of facility, and applied the preauthorization requirement in ways that they were not applied to evaluate claims for care received at analogous medical/surgical facilities, and as a result, denied coverage for H.E.'s treatment at Elements and Waypoint. Therefore, it appears that Plaintiff brings an as-applied challenge. With respect

21

to those determinations, including the lack of medical necessity, the Complaint notes that the denial was based on the application of internal guidelines which are not yet part of the record.

Here, Plaintiff alleges that Elements and Waypoint are both "licensed treatment facilities" in Utah which provide "sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." (Compl. ¶9.) Plaintiff also alleges that Defendant "placed a preauthorization requirement on H.E.'s mental health treatment but does not universally require preauthorization for analogous medical or surgical care." (Compl. ¶80) Plaintiff also alleges that Defendant imposed additional requirements, including criteria beyond the Plan when evaluating claims for mental health or substance use disorder treatment at residential treatment and outdoor behavioral health facilities but did not use additional criteria beyond the terms of the Plan to evaluate claims for inpatient hospice facility treatment. (Compl. ¶96). See Theo M., 2020 WL 5500529, at *5 (finding that the plaintiffs sufficiently pleaded a violation of the Parity Act where they alleged that the defendant required plaintiffs to satisfy additional criteria when evaluating medical necessity). Plaintiff alleges that Defendant imposed treatment limitations on mental health services at Elements which were not equally applied to analogous medical or surgical services based on Defendant's apparent "restriction on a facility type which was only applied to outdoor behavioral health programs" and apparent "preauthorization requirement for outdoor behavioral health programs when many comparable medical or surgical programs such as inpatient rehabilitation or hospice programs had no such requirement." (Compl. ¶¶37-39.) Plaintiff alleges that Defendant categorized Waypoint as an acute inpatient hospital when it is a subacute residential treatment center and that Defendant used acute medical necessity criteria and guidelines to evaluate

H.E.'s sub-acute treatment at Waypoint. (Compl. ¶¶55-56.) Plaintiff contends that the "medical necessity" criteria used by Defendant are more stringent or restrictive than the medical necessity criteria used for analogous intermediate levels of medical or surgical benefit, such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities, and Plaintiff particularly challenges the use of "acute medical necessity criteria" to evaluate the non-acute treatment. (Compl. ¶¶78-79, 82.) See Theo M., 2020 WL 5500529, at *5 (finding that the plaintiffs sufficiently pleaded a violation of the Parity Act where they alleged that the defendant required plaintiffs to satisfy acute care medical necessity criteria rather than sub-acute care criteria in order to obtain benefits despite the fact that the facilities offered sub-acute care); see also Michal M., 2021 WL 1026383 at *14 (analyzing similar Parity Act claim by comparing criteria used for mental health treatment and skilled nursing facilities).

Defendant claims Plaintiff's Parity Act claims are conclusory and "vague." (Def. Br. [Doc. #44] at 16.) However, Plaintiff has plausibly alleged that she has requested documents regarding Defendant's medical necessity criteria on several occasions prior to this litigation, and that Defendant did not provide Plaintiff with these documents. Therefore, Defendant may not benefit from arguing that Plaintiff's Parity Act claims are conclusory and vague if Plaintiff does not have access to information that Defendant allegedly failed to provide to Plaintiff. See Timothy D. v. Aetna Health & Life Ins. Co., No. 2:18CV753DAK, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) ("[A] plaintiff need only plead as much of her prima facie case as possible based on the information in her possession"). Further, the Court notes in particular that the analysis of the District Court of South Carolina in Michael M. v. Nexsen Pruet Group Med. & Dental Plan is very helpful in evaluating a Parity Act claim, but that

23

analysis was on cross-motions for judgment with the ability to compare actual criteria used. Those documents are not before the Court in this case at this stage in the present proceedings. Plaintiff here has alleged that the Plan is subject to the Parity Act and provides benefits for both mental health/substance abuse and medical/surgical treatments; Plaintiff has alleged that there are differing treatment limitations on benefits for mental health care as compared to medical/surgical care; and Plaintiff has made specific allegations as to the additional and more restrictive limitations for preauthorization requirements, for criteria used to determine medical necessity, and in particular for the use of "acute level" criteria for sub-acute mental health treatment that is more restrictive than the criteria used for analogous sub-acute medical/surgical treatment such as skilled nursing facilities. Plaintiff's Complaint includes specific discussion of how these more restrictive criteria were applied in this case, including details regarding H.E.'s background and past treatment, the opinions and recommendations of his doctors and therapists, and examples of the allegedly unequal restrictions set out in Defendant's denials. At this stage in the proceedings, Plaintiff has alleged sufficient facts to state a facially plausible claim for violation of the Parity Act, and further analysis of the specific criteria used and whether it is, in fact, more restrictive than analogous medical/surgical criteria would require consideration of documents and information not presently included in the record and beyond the scope of the present Motion to Dismiss. Therefore, the Court will recommend that the Motion to Dismiss be denied in this respect, but with further consideration once the underlying documents and information are before the Court on dispositive motions.

2. *Parity Act under ERISA 1132(a)(1)(B) or (a)(3)*

24

Defendant contends that even if Plaintiff has stated a viable Parity Act claim, the Parity Act claim by way of the ERISA catchall provision under 29 U.S.C. § 1132(a)(3) for equitable relief is duplicative of her First Cause of Action for ERISA benefits under § 1132(a)(1)(B) and should be dismissed. Thus, the issue raised here is which subsection of § 1132(a) is appropriate for the Parity Act claims in this case.

As discussed above with regard to the First Cause of Action, § 1132(a)(1)(B) provides for a cause of action for a participant or beneficiary seeking to recover benefits under a plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. As a separate provision, Section 1132(a)(3) of ERISA provides that "a civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) is a "catchall" provision and "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).

The Supreme Court and the Fourth Circuit have consistently held that if "adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie." Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 102-03 (4th Cir. 2006) (citing Varity Corp., 516 U.S. at 515, 116). "[I]f the circumstances of a case indicate that a section 1132(a)(1)(B) remedy is or would be adequate to address the plaintiff's alleged injury, the court need not address a remedy sought under

25

section 1132(a)(3) for the same injury." <u>Alan R. v. Bank of Am. Grp. Benefits Program</u>, No. 320CV00441RJCDSC, 2022 WL 413935, at *11 (W.D.N.C. Feb. 9, 2022). "Thus, where it is clear that a party has simply 'repackaged' a denial of benefits claim and placed an equitable relief bow on top, dismissal is warranted." <u>Wood v. Gen. Dynamics Corp.</u>, 157 F. Supp. 3d 428, 431 (M.D.N.C. 2016) (quoting <u>Campbell v. Rite Aid Corp.</u>, No. 7:13–cv–02638, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014)). As this Court recently noted, "[p]ursuant to <u>Korotynska</u>, only in 'exceptional' cases may a plaintiff with a claim under § 1132(a)(1)(B) also pursue relief under § 1132(a)(3). Where a plaintiff makes only allegations that are 'routinely taken up in appeals of benefit denials,' such as issues relating to claims procedures and determinations, a case is not 'exceptional' and there are no 'special circumstances for which equitable relief [under § 1132(a)(3)] is uniquely appropriate.'" <u>Koman v. Reliance Standard Life Ins. Co. & Unifi, Inc.</u>, No. 1:22CV595, 2022 WL 17607056, at *3 (M.D.N.C. Dec. 13, 2022) (quoting <u>Korotynska</u>, 474 F.3d at 108.)

In this case, Plaintiff seeks to recover benefits under 29 U.S.C. § 1132(a)(1)(B) and seeks equitable relief remedies under 29 U.S.C. § 1132(a)(3) for alleged violations of the Parity Act provisions of ERISA. Plaintiff seeks certain equitable remedies that are distinct from damages resulting from the alleged denial of benefits and coverage, (Compl. ¶100), but Plaintiff's injury is same—denial of benefits. <u>See Alan R.</u>, 2022 WL 413935, at *11 ("While the issue for Plaintiffs' Parity Act claim is whether Aetna applied the [Level of Care Assessment Tool] more restrictively than the guidelines applied to certain medical and surgical conditions, it does not change the ultimate injury and intent of the claim which is the same as that raised in the section 1132(a)(1)(B) claim."). Although the Plaintiff's contentions concern

26

a lack of parity between mental health and substance abuse treatment limitations and comparable medical and surgical benefit limitations, Plaintiff's equitable relief allegations all relate to benefits, claim procedures, and claim determinations, and therefore the equitable relief allegations are not exceptional but rather routinely addressed in recovery of benefit claims. Further, as the Court of Appeals for the First Circuit has observed, a Parity Act claim can be brought as part of a claim for benefits under 1132(a)(1)(B), because:

> [A] plan's terms cannot override ERISA's requirements. 29 U.S.C. § 1104(a)(1)(D) (requiring fiduciaries to discharge duties consistent with plan documents "insofar as such documents and instruments are consistent with the provisions of [ERISA]"); e.g., In re Citigroup ERISA Lit., 662 F.3d 128, 139 (2d Cir. 2011) (holding that ERISA's requirements supersede a plan's terms when inconsistent with one another). We have already concluded that N.R. plausibly pled that the Habilitative Services Exclusion violates the Parity Act. Considering these concepts together, we see that N.R. properly pleads that the Habilitative Services Exclusion is trumped by ERISA and is accordingly unenforceable. Therefore, without the Exclusion in force, N.R. has a perfectly reasonable argument that he's owed "benefits due to him under the terms of his plan." See 29 U.S.C. § 1132(a)(1)(B).

N.R. v. Raytheon Co., 24 F.4th 740 (1st Cir. 2022). If this analysis is followed, Plaintiff's Parity Act claim can be considered as a part of her claim for benefits under § 1132(a)(1)(B), and the remedy under § 1132(a)(1)(B) would be adequate to address the Plaintiff's alleged injury. See also Korotynska, 474 F.3d at 105-06, 108 (noting "the danger that a beneficiary might 'repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty'" and concluding that in Varity, the "Supreme Court intimated that equitable relief for breach of fiduciary duty would not be available for denial of benefits claims appealable under § 1132(a)(1)(B)" since otherwise, "every wrongful denial of benefits could be characterized as a breach of fiduciary duty").

The Court notes, however, that this determination is based on the assumption that § 1132(a)(1)(B) would allow for correction of the Plan or its guidelines or criteria if found to violate the Parity Act, since the terms of the Parity Act, as included in ERISA, would override any terms or guidelines or criteria that violate the Parity Act. However, if such correction of Plan terms and guidelines is not available under § 1132(a)(1)(B), then relief under § 1132(a)(3) would not be duplicative and would be necessary to modify the terms of the Plan. See Dean v. National Production Workers Union Severance Trust Plan, 46 F.4th 535, 544-45 (7th Cir. 2022) (addressing ERISA claims related to rollover of accounts, and noting that in CIGNA Corp. v. Amara, "the district court changed the terms of the plan—taking out some provisions and adding new ones. The Supreme Court concluded that § 502(a)(1)(B)'s plain language did not authorize these changes, which were 'akin to the reform of a contract, [and] seem[ed] less like the simple enforcement of a contract as written and more like an equitable remedy.' But the Court held that the district court did have authority to modify the terms of the plan under § 502(a)(3)." (quoting CIGNA, 563 U.S. 421, 425, 433, 436, 442 (2011)) (internal citations omitted)); see also Christine S. V. Blue Cross v. Blue Shield of New Mexico, 428 F. Supp. 3d 1209 (D. Utah 2019) (undertaking extended discussion of this issue).

At this point, the Court concludes that it is likely that a § 1132(a)(1)(B) remedy is or would be adequate to address Plaintiff's injury related to the alleged Parity Act violation, particularly where Plaintiff raises "as applied" Parity Act claims, and therefore a separate claim under § 1132(a)(3) is duplicative. However, given the preliminary stage of the proceedings and the need for further proceedings on the claim for benefits in the First Cause of Action and the Parity Act claim in the Second Cause of Action, the Court can defer determination of

whether a § 1132(a)(3) remedy would be necessary to modify the terms of the Plan to provide relief if the Parity Act claim is ultimately established. See Wood v. General Dynamics Corporation, 157 F. Supp. 3d 428, 431 (M.D.N.C. 2016) (exercising discretion under Federal Rule of Civil Procedure 12(i) to defer ruling until the next dispositive stage of litigation where it was difficult to discern whether the equitable relief claim was duplicative of the denial of benefits claim due to the limited factual record).

Therefore, the Parity Act claim should be allowed to proceed and can be considered as part of the claim for benefits under § 1132(a)(1)(B), but if the Parity Act claim is established, and if modification of the Plan is ultimately necessary, and if that modification is outside § 1132(a)(1)(B), the Court can then construe the claim as within the authority of § 1132(a)(3) and not duplicative of the claim under § 1132(a)(1)(B). As such, the Court recommends that the Motion to Dismiss be denied to the extent that the Second Cause of Action based on the Parity Act may proceed, reserving determination on whether any potential relief would be part of Plaintiff's First Cause of Action under 29 U.S.C. § 1132(a)(1)(B), or would first require reformation of the Plan terms under 29 U.S.C. § 1132(a)(3).

D. Third Cause of Action: Request for Statutory Penalties under 29 U.S.C. § 1132(a)(1)(A) and (c)

In the Third Cause of Action, Plaintiff seeks statutory damages pursuant to 29 U.S.C. § 1132(a)(1)(A) and (c) based on Defendants' failure to produce certain requested documents within 30 days, specifically "documents under which the Plan was established or operated." Defendant BlueCross argues that Plaintiff has failed to state a claim for two reason. First, Defendant contends that the required documents were timely provided by the Plan Administrator, Carson-Dellosa Publishing, LLC. Second, Defendant BlueCross argues that it

29

is not the Plan Administrator but the third-party claims administrator and therefore, it cannot be liable under § 1132(c).

"Section 1132(c) of Title 29 (ERISA § 502(c)) provides for liability against 'any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required <u>by this subchapter</u> to furnish to a participant or beneficiary.'" <u>Craine v. Hartford Life & Acc. Ins. Co.</u>, No. 1:08CV586, 2010 WL 1957593, at *3 (M.D.N.C. May 17, 2010) (citing 29 U.S.C. § 1132(c)(1). "Specifically, 29 U.S.C. § 1024(b)(4) requires plan administrators to 'furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.'" <u>Id</u>. District courts have the discretion to award a daily statutory penalty (currently $110) if a plan administrator fails or refuses to comply with a written request within thirty days. <u>Id.</u>; <u>see also</u> 29 C.F.R. 2575.502c–1 (2007).

As noted above, Defendant BlueCross contends that these statutorily required documents were provided by Carson-Dellosa Publishing, the Plan Administrator. Plaintiff contests this assertion. On this point, to the extent there may be disputes regarding what documents were requested, and when, and what documents were provided, and when, those would be issues beyond the scope of a Motion to Dismiss.

However, to the extent that this claim is asserted against Defendant BlueCross, Defendant BlueCross contends that it is not the Plan Administrator and is instead the third-party claims administrator, and therefore cannot be liable under § 1132(c). In Response, Plaintiff alleges that Defendant BlueCross was acting as an agent of the Plan Administrator

and received Plaintiff's requests for documents (Def. Br. [Doc. #44] at 23-24). However, Plaintiff has not cited any case law or support for holding BlueCross liable for statutory penalties when it was not Plan Administrator. The Fourth Circuit has held that the employer who was Plan Sponsor and Plan Administrator bore the statutory duty to provide the requisite documents, and

> [w]hile it is true that an insurer will usually have administrative responsibilities with respect to the review of claims under the policy, that does not give this court license to ignore the statute's definition of plan administrator and to impose on Nationwide the plan administrator's notification duties. See Moran v. Aetna Life Ins. Co., 872 F.2d 296, 298–300 (9th Cir.1989) (holding that group health insurer who was not plan administrator did not bear reporting and disclosure responsibilities); Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1138–39 & n. 5 (D.C.Cir.1989) (holding that group health insurer was not a plan administrator within the meaning of ERISA and did not have duty to provide summary plan information). We, therefore, conclude that Nationwide was not the plan administrator and consequently could not have breached the administrator's statutory duties.

Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 62 (4th Cir. 1992); see also Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989) ("Congress has provided for three classes of persons who may be sued as the plan administrator under section 1132(c). Because Aetna was not designated as plan administrator in the policy and is not the plan sponsor, it is not liable under the statute.").

To the extent Plaintiff argues that BlueCross was acting as an agent of Carson-Dellosa Publishing, it is not clear how that would impose statutory liability on BlueCross. It is possible that Plaintiff intends to assert that her requests to BlueCross for Plan Documents should be treated as requests to Carson-Dellosa Publishing, as part of a claim that Carson-Dellosa Publishing violated its statutory obligations by failing to provide the documents. See, e.g., Julian B. v. Regence Blue Cross and Blue Shield of Utah, 2020 WL 1955222, at *5-6 (D. Utah

April 23, 2020). However, that would not create a basis to impose statutory liability on Defendant Blue Cross.[3] Therefore, to the extent Plaintiff is asserting a claim for statutory damages under § 1132(c), that claim must be asserted against the Plan Administrator, and the claim against Defendant BlueCross should be dismissed. [4]

### E. Plaintiff May Proceed Under Pseudonym

The Court notes that Plaintiff filed this action individually and on behalf of her minor son, H.E., who is no longer a minor. Defendant raises this issue in a footnote in its Motion to Dismiss, requesting that the Court "strike Plaintiff's SAC or issue an order requiring Plaintiff to show cause why she should be permitted to proceed anonymously." (Def. Br. [Doc. #44] at 1 n.1). Plaintiff responded to Defendant's request in her Response Brief, providing support for the use of pseudonym for herself and her son, who was a minor at the times relevant to this action. (Pl. Res. [Doc. #45] at 22-24). Although "the general presumption of openness of judicial proceedings applies to party anonymity[,] . . . under appropriate circumstances anonymity may, as a matter of discretion, be permitted." James v.

_____

[3] The Court notes that Plaintiff previously filed a Stipulation [Doc. #7], dismissing without prejudice its claims against The Carson-Dellosa Publishing Welfare Benefit Plan. However, the Second Amended Complaint asserts claims against Carson-Dellosa Publishing, LLC (the employer serving as the Plan Administrator, not the Welfare Benefit Plan). In the Second Amended Complaint, Plaintiff specifically asserts claims against Carson-Dellosa Publishing in the Third Cause of Action under § 1132(c). Carson-Dellosa Publishing has not answered or moved to dismiss, and it is not clear if it was ever served. The present Motion to Dismiss is brought only by Defendant BlueCross. Therefore, the Court does not address any claims that may have been asserted against Carson-Dellosa Publishing, LLC as Plan Administrator.

[4] To the extent Plaintiff raises claims against Defendant BlueCross for failing to provide documents regarding benefit denials as required by 29 U.S.C. § 1133, those claims can be considered as part of the First Cause of Action related to the claim for benefits and alleged lack of full and fair review, but would not provide a basis for statutory penalties under § 1132(c). See Craine, 2010 WL 1957593, at *4-5 (citing 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1(h)(2)(iii) and (h)(4), (i)(5) and (j)(3)) (requiring plan fiduciaries to provide the claimant, upon request, documents relevant to the benefit claim review).

Jacobson, 6 F.3d 233, 238 (4th Cir. 1993) (internal citation omitted). The Fourth Circuit has enumerated a non-exhaustive list of factors for district courts to consider in evaluating a request for a party to proceed under a pseudonym:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and,
>
> [5] relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). In considering the Jacobson factors as a whole, this Court finds that the factors weigh in favor of allowing Plaintiff to proceed using the pseudonyms N.E. and H.E. First, Plaintiff makes the request to preserve privacy because this case involves sensitive and highly personal matters. Second, identification of H.E.'s and by extension N.E.'s identity, could pose mental harm to H.E. as the details of H.E.'s substance abuse and mental health issues would be revealed to the public. Third, although he is no longer a minor, H.E. was a minor when the facts underlying this case occurred, which also weighs in favor of protecting his identity and by extension, N.E.'s identity. Finally, there is no risk of unfairness to Defendant if N.E. and H.E. are permitted to proceed under pseudonym because Defendant already knows their identities. (Pl. Res. [Doc. #45] at 24). Therefore, in order to preserve the public interest in open proceedings and protect Plaintiff's legitimate

privacy interest, Plaintiff may proceed under pseudonym in lieu of moving to seal documents as the case proceeds, which is disfavored by the Local Rules. <u>See</u> L.R. 5.4.

However, because H.E. has reached the age of majority and Plaintiff alleges that the medical expenses at issue were incurred by her, as opposed to H.E., who was a minor at the time of treatment, the Court will direct Plaintiff to set out the proper Plaintiff(s) to this action and identify whether Plaintiff should continue to proceed on behalf of H.E. or whether H.E. should be added as a second Plaintiff. Those issues can be addressed at the Initial Pretrial Conference or the Joint Rule 26(f) Report if any issues remain. N.E. and H.E., should he be added as a Plaintiff, both may proceed under pseudonym in this action. To the extent that either Party can make a showing as to why the Court should proceed differently, they may file a motion in accordance with the Local Rules of this District.

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. #43] be GRANTED IN PART AND DENIED IN PART for the reasons set out above; specifically that the Motion to Dismiss as to the First Cause of Action be denied without prejudice to further consideration of these issues on the record on appropriate dispositive motions, that the Motion to Dismiss as to the Second Cause of Action be denied to the extent that the claim based on the Parity Act may proceed, reserving determination on whether any potential relief would be part of Plaintiff's First Cause of Action under 29 U.S.C. § 1132(a)(1)(B), or would first require reformation of the Plan terms under 29 U.S.C. § 1132(a)(3); and that the Motion to Dismiss as to the Third Cause of Action be granted as to Defendant BlueCross.

34

IT IS ORDERED that Plaintiff may proceed using initials as pseudonyms.

IT IS FURTHER ORDERED that this matter be set for an Initial Pretrial Conference on April 13, 2023, at 9:30 a.m.

This, the 24th day of February, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge